```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                          AT BECKLEY
```

**JOHN M. LEWIS, et al.,**

    **Plaintiffs,**

**v.**                                    **Civil Action No. 5:05-0525**

**RICKY L. HOWELL, et al.,**

    **Defendants.**

## MEMORANDUM OPINION

Pending before the court is plaintiffs' motion for summary judgment (Doc. No. 15). In an accompanying Judgment Order, for the reasons stated below, the court grants this motion, awards judgment against defendant in the amount of $25,349.24, and directs defendant to provide health care benefits to plaintiff Lewis.

### I. Factual Background

This is an action brought to recover retiree health benefits owed to the individual plaintiff, John M. Lewis ("Lewis"). (See Doc. No. 15-2 at 1.) Lewis is a retired coal miner who was last employed by defendant Ricky L. Howell, who was a sole proprietor doing business under the trade name of Chell Chell Trucking ("Chell Chell"). (See Doc. No. 15 Ex. 9 at 17-18.) Lewis asserts that he is entitled to lifetime health benefits under the terms of the National Bituminous Wage Agreement of 1998 ("1998 NBCWA") to which Howell was signatory.

Plaintiffs aver that defendant Howell entered into a subcontracting agreement with Big G Trucking ("Big G") to transport coal for Cannelton Industries ("Cannelton") in July 1999. Plaintiffs indicate that Big G had been using trucks leased from the previous contractor, but lost the trucks when the previous contractor defaulted on its lease. Big G then subcontracted with Howell to perform its obligations under the contract with Cannelton. Big G was a signatory to the 1998 NBCWA, a national collective bargaining agreement between the United Mine Workers of America ("UMWA") and the Bituminous Coal Operators Association. As part of the subcontracting arrangement, Howell agreed to sign the 1998 NBCWA, and honor the panel rights of Big G's UMWA employees. Howell had four employees who were also retained and covered by the UMWA agreement. Big G, Howell (d/b/a Chell Chell Trucking), and the UMWA executed a Memorandum of Understanding describing the three-way arrangement which was attached to the UMWA contract.

Pursuant to this arrangement, Howell signed a collective bargaining agreement with the UMWA on July 8, 1999. (See Doc. No. 15 Ex. 1.) That agreement consisted of several documents: (1) a "me-too" agreement adopting "each and every term of the 1998 NBCWA"; (2) a "Memorandum of Understanding Regarding Job Opportunities"; (3) the "Memorandum of Understanding Between Big G Trucking, et al., Chell Chell Trucking, and District 17, UMWA,"

memorializing the subcontracting arrangement and the panel rights agreement; (4) a "Memorandum of Understanding Between Chell Chell Trucking and International Union, UMWA," which makes certain modifications to the terms of the 1998 NBCWA; (5) a Memorandum of Understanding ("MOU") which requires the employer to notify the Local Union President each month that all wages and benefits have been paid; and (6) a MOU providing that the agreement would also cover prospective trucking contracts at Pond Fork or Prenter if Chell Chell entered into such contracts.

Here, plaintiffs assert that only the first and fourth documents discussed above are relevant to this case.  The MOU includes an "Attachment A" titled "Health Care Payment/Deductible" which provides for a $1000 payment for health care and a $750 deductible.[1]  Additionally, two later MOUs were entered into that extended the involved contracts through December 31, 2000.  (See Doc. No. 15 Exs. 3 & 4.)

Lewis last worked for Howell on or about July 15, 2001, when he suffered a broken ankle.  When he was released to return to work in October 2001, he discovered that Howell had shut down his

---

[1] Plaintiffs indicate that this money is a medical cost-control measure which provides for a $750 deductible in the medical plan, offset by a $1,000 cash payment to the employee. The employee then pays the first $750 of medical bills.  The health care payment provides an incentive to avoid unnecessary medical expenses.  The employer is responsible for the payment to active, laid off, and disabled employees.  The UMWA 1974 Pension Plan makes the payment to retirees.  The extra $250 is to cover the additional income tax generated by the cash payment.

trucking business, and laid off his employees, including Lewis. As of that date, Lewis was 57 years old and eligible to retire with an Age 55 pension under the terms of the NBCWA.  He applied for his pension from the UMWA 1974 Pension Plan, and was granted an Age 55 pension effective January 1, 2002.  (See Doc. No. 15 Exs. 7 & 8.)  Under the terms of the 1998 NBCWA, he was entitled to health benefits as an Age 55 pensioner.  His pension award letter notified him to contact his last signatory employer, which was identified as Chell Chell.

Lewis then contacted Howell and requested that he be provided with a health insurance card.  Howell has refused to provide Lewis with benefits, contending that he is not obligated to do so.  As a result of that refusal, Lewis has incurred $25,349.24 in medical bills.  (Doc. No. 15 Ex. 7.)  As a result of this refusal, plaintiffs filed this action to compel defendant to honor his obligations under the terms of the collective bargaining agreement.

## II.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56.  The moving party has the burden of establishing that there is no genuine issue as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the burden then shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51.  Significantly, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III.  Analysis

Having reviewed the record and applicable case law, it is clear plaintiffs' motion for summary judgment must be granted. Defendants aver that the grant of summary judgment in this case is improper because the involved project Lewis worked on shut down as of December 23, 2000, and that there was a verbal extension of an MOU to some date in December 2000.  (See Doc. No. 17 at 1-2.)  Defendant has provided sworn statements from union officials supporting this contention.  (See Doc. No. 17 Exs. 1 & 2.)  However, none of the materials provided by defendant refute any of the evidence provided by plaintiffs that Lewis's "last signatory classified employment" was with defendant.

The 1993 and 1998 NBCWAs both carry forward from previous plans references to the employer providing benefits "for life" notwithstanding the expiration of the involved contract.  (See, e.g., Doc. 15 Ex. 2 at 11.)  The plan also added new language that was expressly intended to make clear that the last signatory employer of a retiree was responsible for providing benefits under the plan, notwithstanding the expiration of the contract:

> The parties expressly agree that the language references to "for life" and "until death" that are retained in this General Description are intended to mean that each employer will provide, for life, only the benefits of its own eligible retirees who [retired between February 1, 1993 and the Effective Date, or who] retire during the term of this Agreement.  A retiree shall be considered a retiree of an Employer if his last signatory

-6-

> classified employment was with such Employer. The benefits and benefit levels provided by an employer under its Employer Plan are established for the term of the Agreement only, and may be jointly amended or modified in any manner at any time after the expiration or termination of this Agreement.

(Doc. No. 15 Ex. 2 at 11.)

The 1993 NBCWA also created a new multi-employer plan for "orphaned" retirees, the UMWA 1993 Benefit Plan, to replace the 1974 Benefit Plan, which had been merged with the 1950 Benefit Plan and closed to future retirees by the Coal Act. The intent of the UMWA and Bituminous Coal Operators Association ("BCOA") in drafting the 1993 NBCWA is clear: each employer would be responsible for the benefits of its own retirees, and the 1993 NBCWA, the 1993 Benefit Plan, would be responsible only if the last employer were both out of business and financially unable to provide benefits. (See Doc. No. 15 Ex. 6.) Courts construing the new language in the 1993 and 1998 NBCWAs have unanimously held that the language of both agreements requires employers to provide lifetime benefits to their retirees. See, e.g., District 17, UMWA v. Brunty Trucking Co., 269 F. Supp. 2d 702, 708-09 (S.D.W. Va. 2003) (Goodwin, J.), UMWA v. BethEnergy Mines, Inc., 2001 WL 737558 (S.D.W. Va. Mar. 19, 2001) (same); UMWA v. Falcon Energy, Inc., No. 1:99-0388 (S.D.W. Va. Mar. 19, 2002) (Faber, J.). As the court noted in Brunty Trucking:

> The most immediate problem under the 1974 NBCWA, as interpreted by the courts, was that

>employers' obligations to provide benefits ceased once they were no longer signatories to the contract. The new 1993 provision altered that situation by making it clear that the employers' obligation to provide health benefits continued for the life of the employer, not simply for the life of the collective bargaining agreement.

See 269 F. Supp. 2d at 708-09.

As plaintiffs note, the new language in the 1993 NBCWA explicitly addresses the issues left unanswered by the Coal Act. First, it clearly indicates that retirees continue to be entitled to lifetime benefits. Not only are references to benefits "for life" or "until death" from the 1988 and prior NBCWAs still in the General Description, but the new language expressly says that those references "are retained," reaffirming that the promise of lifetime benefits continues.

The parties clearly intended to require the employer to provide benefits so long as it is financially able to do so, and to prevent employers from dumping their retirees on the new orphan funds, and added new language to the 1993 NBCWA to emphasize this intent:

>. . . For the purposes of determining eligibility under the 1993 Benefit Plan and Trust, the Employer is considered to be "no longer in business" only if the Employer meets the conditions of (I) and (II) below. The parties expressly intend that each of the requirements of (I) and (II) be met.
>    (I) The Employer has ceased all mining operations and has ceased employing persons under this Wage Agreement, with no reasonable

>>expectation that such operations will start up again; and
>
>>(II) The Employer is financially unable (through either the business entity that has ceased operations as described in subparagraph (a) above, including such company's successors and assigns, if any, or any related division, subsidiary, or parent corporation, regardless of whether covered by this Wage Agreement or not) to provide health and other non-pension benefits to its retired miners and surviving spouses.

(See 1998 NBCWA, Art. XX, Section (c)(3)(ii)).

In this case, it is clear that Lewis is entitled to lifetime retiree benefits under the terms of the 1998 NBCWA provided by defendant unless either there was some modification to the 1998 NBCWA contained in the UMWA-Chell Checll agreement that relieved defendant of that obligation, or unless Lewis had another signatory employer after Howell. As neither of these happened, Lewis is entitled to lifetime benefits.

The thrust of both defendant's deposition testimony, and his response in opposition to plaintiffs' motion for summary judgment is that the July 9, 1999, and September 16, 1999, MOUs, modifying certain provisions of the 1998 NBCWA, relieve him of his obligation to provide lifetime benefits to Lewis. Defendant reiterates this point in his response. However, the court's review of these documents leads to the conclusion that they do not support defendant's position in the slightest.

Defendant signed an agreement to "agree to and adopt each and every term of the 1998 NBCWA."  The July 9, 1999, agreement also provides that the provisions of the 1998 NBCWA are incorporated by reference, including all of the provisions of Article XX, providing for lifetime benefits for retirees.  Although there was a MOU that modified the 1998 NBCWA, the only health-care related item it modified was the health-care payment outlined above.  Indeed, paragraph 11 of the MOU expressly provides that "[e]xcept as modified above, all other terms and conditions outlined in the 1998 NBCWA shall apply for the duration of this Agreement."  The September 16, 1999, MOU is similarly inapplicable.  (See Doc. No. 15 at 11-13.)

In Falcon Energy, Case No. 1:99-0388, in examining similar circumstance, this court found that modifications in a similar MOU had no reference to lifetime retiree health benefits, and that the explicit incorporation of the terms of the 1993 NBCWA necessarily incorporated the 1993 NBCWA's provisions on lifetime health benefits.  See id. at 11-12.

In this case, the provisions of the relevant MOUs do not support defendant's argument.  Accordingly, defendant remains obligated under the plain language of the 1998 NBCWA to provide health care benefits to Lewis because defendant was Lewis's last signatory employer.  Neither the language of the MOUs, nor the affidavits provided by defendant with his opposition to

-10-

plaintiffs' motion for summary judgment create a genuine issue of material fact in this case because the MOU does not address retiree health care benefits at all. As such, plaintiffs' motion for summary judgment must be granted.

### IV. Conclusion

By accompanying Judgment Order, the court grants plaintiffs' motion for summary judgment (Doc. No. 15), awards judgment to plaintiffs in the amount of $25,349.24, and directs defendant to provide health care benefits to plaintiff Lewis going forward.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED this 7th day of April, 2006.

ENTER:

David A. Faber
Chief Judge